# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WILLIAM HITCHCOCK,**

            **Plaintiff,**

**-vs-**                                 **Case No.  6:04-cv-1722-Orl-28JGG**

**ORANGE COUNTY, FLORIDA,**

            **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **MOTION FOR APPROVAL OF SETTLEMENT; MOTION TO DISMISS CASE WITH PREJUDICE (Doc. No. 53)** |
| **FILED:** | **October 25, 2006** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

I.    **PROCEDURAL HISTORY**

Plaintiff William Hitchcock sued Defendant Orange County, Florida for violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 216(b) ("FLSA"), for allegedly failing to pay him overtime wages.  The parties filed a Notice of Settlement [42] on April 19, 2006.  The Court, therefore, dismissed the case on April 20, 2006.  Docket 43.  On June 6, 2006, Plaintiff moved to reopen the case as the parties had not yet executed a written settlement agreement and Defendant had not paid any of the monies agreed upon.  Docket 44.

On June 21, 2006, the Court granted Plaintiff's motion to reopen the case, and ordered the parties to file a Joint Status Report by July 5, 2006, informing the Court of the status of executing a settlement agreement and whether the settlement represented a compromise of Plaintiff's claims so that the Court must determine the fairness of the settlement as required by *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).   Docket 46.   On July 5, 2006, the parties filed a Joint Status Report stating that an executed settlement agreement was anticipated in 14 days.  Docket 47.   The Joint Status Report did not state whether the settlement represented a compromise of Plaintiff's claims.

On September 11, 2006, the Court ordered the parties to file another Joint Status Report by September 18, 2006, and again directed the parties to inform the Court whether the settlement represented a compromise of Plaintiff's claims.  Docket 48.  On September 19, 2006, the parties filed a Joint Status stating that a settlement agreement had been executed and the parties were awaiting ratification of the agreement by the Board of Commissioners.  Docket 49.  The Board was scheduled to meet that evening, and the parties anticipated filing the documents necessary to close the case on September 22, 2006.  *Id.*  The parties, however, still failed to inform the Court whether the settlement represented a compromise of Plaintiff's claims.

On September 19, 2006, Plaintiff also filed a notice of voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(1).  Docket 50.  On September 27, 2006, the Court ordered the parties to file the terms of the settlement agreement within 11 days so that the Court could determine whether the settlement was a compromise of Plaintiff's claim and to conduct the fairness hearing required by *Lynn's Food Stores.*  Docket 51.  When the parties failed to comply, on October 24, 2006, the Court issued an Order to Show Cause ("OSC") why the parties should not be sanctioned for failing to comply with the

Court's orders.  Docket 52.  The parties were ordered to file their response to the OSC within eleven

days of the Court's order – which was November 7, 2006.  On the day after the OSC, the parties filed

the instant joint motion to approve the settlement and dismiss the case.  Docket 53.

The Honorable John Antoon, II referred the matter to this Court for issuance of a Report and

Recommendation as to the parties' joint motion to approve the settlement and dismiss the case, and

for resolution of the issues presented by the OSC.

I.      THE LAW

A.      Approval of Settlements

Congress enacted the FLSA to protect workers from low wages and long hours that can result

from the inequality in bargaining power between employers and employees.  The FLSA, therefore,

provides that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be

liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid

overtime compensation, as the case may be. . . ." 29 U.S.C. §216(b).  The FLSA's provisions are

mandatory and, except in two narrow circumstances generally are not subject to bargaining, waiver,

or modification by contract or settlement.  *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945).

The two circumstances in which FLSA claims may be compromised are claims that are 1.) supervised

by the Secretary of Labor pursuant to 29 U.S.C. § 216(c) and 2.) when a court reviews and approves

a settlement in a private action for back wages under 29 U.S.C. § 216(b).  *Lynn's Food Stores, Inc.

v. United States, U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982).

Before the Court may approve the settlement, it must scrutinize the settlement to determine

whether it is a fair and reasonable resolution of a bona fide dispute.  *Id.* at 1354-55.  If a settlement

in an employee FLSA suit reflects "a reasonable compromise over issues," such as FLSA coverage

or computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id*. at 1354.  Where the employer offers the plaintiff full compensation on his FLSA claim, no compromise is involved and judicial approval is not required.  *MacKenzie v. Kindred Hosp. East, L.L.C.*, 276 F. Supp. 2d 1211, 1217 (M.D. Fla. 2003).

In determining whether the settlement is a fair and reasonable resolution, the Court adopts the factors used in approving the settlement of class actions:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel.

*See  Leverso v. SouthTrust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994).  When considering these factors, the Court should keep in mind the "strong presumption" in favor of finding a settlement fair.  *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977).   Moreover, the Court is aware, as the parties must also be, that a "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir.1995), *citing Cotton*, 559 F.2d at 1330.

## B.     Awards of Reasonable Attorneys' Fees and Costs

An award of "reasonable attorneys' fee[s] . . . and costs" is mandatory under § 216(b) if the employer is held liable.  Although the court is obligated to award the attorneys' fees, Congress's use of the word "reasonable" confers discretion upon the court to determine the amount of fees to be awarded.  In determining the reasonableness of attorneys' fees pursuant to a fee-shifting statute, the

lodestar generally is recognized as a reasonable fee.  *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).[1]

Even a contested request for attorneys' fees "should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  The party seeking attorneys' fees bears the initial burden of submitting adequate documentation of the hours reasonably expended and of the attorney's qualifications and skill.  *See id.* at 433, 437.  Further, fee counsel must "supply the court with specific and detailed evidence from which the court can determine the reasonable hourly rate."  *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir.1988).  Satisfactory evidence of the prevailing market rate "at a minimum is more than the affidavit of the attorney performing the work," and must address rates actually billed and paid in similar lawsuits.  *Id.* at 1299. Where the documentation is inadequate, the district court must still determine a reasonable fee, which it may do without further pleadings or an evidentiary hearing.  *Id.* at 1303.  This is because the court itself is an expert on the question and "may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."  *Id.* (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

In collective FLSA actions, the court has a duty to determine the reasonableness of the proposed attorneys' fees as part of the fairness determination.  *See, e.g., Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849-50 (5th Cir. 1998).  This makes sense, as most settlements of collective actions involve a lump sum settlement with an amount to be deducted for attorneys' fees.

---

[1] The lodestar is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. A reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988).

-5-

In such cases, it is necessary for the court to evaluate the overall fairness of the settlement and the benefit to the plaintiffs.

The FLSA does not require the court to assess the fairness of an agreed payment of attorneys' fees in settling an individual action.  Indeed, the purpose of the fairness review is to ensure that an employer does not take advantage of an employee in settling his claim for wages, and not to ensure that the employee does not overcharge the employer.  *See Lynn's Food Stores*, 679 F.2d at 1354.  In an individual FLSA claim, where separate amounts are set forth for the payments of unpaid wages and payments for attorneys fees, the Court has greater flexibility in exercising its discretion in determining the reasonableness of the attorneys' fee.  The Court takes judicial notice of Judge Conway's order in *Perez v. Nationwide Protective Services*, Case 6:05-cv-328-ORL-22JGG (October 31, 2005), where she ruled that "[t]he Court notes that it has an obligation to ascertain the reasonableness of any attorney fee award.  However, an in depth analysis is not necessary unless the unreasonableness is apparent from the face of the documents."

The award of costs is made in accordance with 28 U.S.C. § 1920.  *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1169 (S.D. Fla. 2003).  In an FLSA action, it is error for a district court to award costs in excess of those permitted by § 1920.  *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567 (11th Cir. 1988) (district court erred in awarding expert witness fees under §216(b) that exceeded the amount allowed by § 1920).  Likewise, a district court must identify reasons for denying costs to a prevailing party so that the appellate court has some basis to review whether the district court acted within its discretionary power.  *Head v. Medford*, 62 F.3d 351, 354 (11th Cir. 1995).

## II.     APPLICATION

### A.     <u>Approval of the Settlement</u>

The Court has reviewed the settlement.  On the one hand, Defendant states the settlement represents a compromise of Plaintiff's claim.  Docket 54 at 1.  On the other hand, the Joint Motion to Approve the Settlement states that the settlement reflects "Plaintiff's full amount of unpaid overtime wages."  Docket 53 at 2.  Further, Defendant is paying liquidated damages in an equal amount to the unpaid overtime, plus attorneys' fees.  It appears, therefore, that Plaintiff has received everything to which he arguably was entitled by law.

Despite the lack of clarity in the parties' statements, the parties agree that there was a bona fide dispute as to whether Plaintiff was entitled to overtime wages and that Defendant negotiated with Plaintiff's independent counsel to resolve the dispute.  Docket 53 at 1-2.  Defendant agreed to pay $33,000 to Plaintiff as back wages and liquidated damages, and to pay Plaintiff's counsel a total of $26,000 in attorneys' fees and costs for the two cases.

Based on the parties' representations, the Court finds there was a bona fide dispute.  In terms of fairness of the settlement, each party was independently represented by counsel.  Counsel were obligated to vigorously represent their clients' rights.  Based on the amount to be paid to Plaintiff, there is no suggestion of collusion.  The settlement is a fair and reasonable resolution of a bona fide dispute. Defense counsel believe Plaintiff's attorneys' fees and costs are reasonable and do not contest the amount of attorneys' fees or costs.

The Court, therefore, recommends approval of the settlement and dismissal of the case.

B.      **Resolution of the Order to Show Cause**

The Court's OSC demanded that the parties address two issues: 1) why the parties failed to respond to the Court's orders dated June 21, 2006, and September 11, 2006, and state whether the settlement represented a compromise of Plaintiff's claims;[2] and 2) why the parties failed to comply with the Court's order dated September 27, 2006, requiring the filing of the Settlement Agreement within 11 days.  Docket 52.

Defendant Orange County initially filed its response to the OSC on October 25, 2006, which the Court struck for failure to sign the response as required by Fed. R. Civ. P. 11.  Docket 54, 56. Defendant's Amended Response to the OSC does not attempt to explain its failure to comply with the Court's June 21 order.  Docket 58.

With respect to the September 11 and September 27 orders, Defendant offers a variety of explanations.  First, Gary Glassman had left Defendant's employ and responsibility for the case was passed to Joseph L. Passiatore.  Passiatore does not state when he became responsible for the case.[3] Passiatore relied on Plaintiff's counsel to prepare the response to the Court's September 11 order, because Plaintiff's counsel was more familiar "with the settlement disclosure requirements for FLSA cases."  Docket 58 at ¶ 7.  Passiatore further claimed that he had no knowledge of the Court's order entered on September 27, 2006, because he did not receive notice of the order, despite having entered a general appearance on September 19, 2006, by way of the Joint Status Report.  Docket 58 at ¶ 9.

_____

[2] The parties did file responses to both the June 21 and September 11 orders, however those responses were incomplete and failed to address whether the settlement was a compromise of Plaintiff's claims.

[3] The Court takes judicial notice of the Motion to Withdraw Gary M. Glassman as Counsel of Record, filed in *Konikov v. Orange County, Fla.*, Case 6:02-cv-00376-JA-JGG, Docket 432.  In that motion, Glassman represented that he resigned from the Orange County Attorneys' Office effective August 18, 2006.

The Clerk's office did not add Passiatore as an attorney of record on this case until October 26, 2006.

Plaintiff's response to the OSC states that the failure to advise the Court as to the nature of the settlement in response to the Court's June 21 and September 11 orders was an "oversight" and was unintentional.  Docket 57 at ¶ 1.  With respect to the failure to file the settlement agreement in response to the Court's September 27 order, Plaintiff's counsel explains that due to water damage to its offices, counsel was required to evacuate their offices from October 2-9, 2006.  Docket 57 at 3. Further, due to interruption in electrical service at the building, counsel was unable to access its files remotely.  *Id*.  No explanation is provided as to why counsel did not comply with the Court's order when he resumed occupancy of his office on October 10, 2006.

While Defendant presents good cause for failing to respond to the Court's September 27 order, Defendant offers no excuse for failing to respond fully to the Court's June 21 order.  Further, even though Plaintiff's counsel prepared the response to the Court's September 11 order, defense counsel signed the Joint Response. He was obligated to review the response for accuracy and completeness. Plaintiff's counsel's response also reflects a general sloppiness and lack of attention to detail in reading and responding to the Court's orders.

The Court does not recommend sanctions for counsels' perfunctory responses to the Court's orders.  The Court recommends that the OSC be discharged with an admonishment to all counsel that their responses to the Court's orders fall below the Court's expectations and has created additional unnecessary work for an already over-burdened Court.  Similar conduct in the future may result in personal sanctions against counsel.

Therefore, it is **RECOMMENDED** that:

1.      The settlement reached by the parties be approved;

-9-

2.      The case be dismissed with prejudice;

3.      The OSC be discharged; and

4.      The Clerk should be directed to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on November 8, 2006.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

The Honorable John Antoon, II
Counsel of Record

-10-